# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:

Daniel West

    Debtor(s)

William Ward

    Plaintiff(s)

v.

Daniel West

    Defendant(s)

**JUDGE RICHARD L. SPEER**

Case No. 09-3255

(Related Case: 09-34653)

## DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine Dischargeability. The statutory basis for the Plaintiff's Complaint relies on 11 U.S.C. § 523(a)(6) which excepts from discharge any debt arising as the result of a "willful and malicious" injury caused by the debtor. At the conclusion of the Trial, the Court took the matter under advisement so as to afford the opportunity to thoroughly consider the evidence submitted to the Court. The Court has now had this opportunity and, for the reasons set forth in this decision, finds that the debt in controversy is Dischargeable.

## FACTS

The Debtor/Defendant, Daniel West (hereinafter the "Debtor"), is a single man, with three sons, ages 16, seven and two. In February of 2007, the Debtor entered into an agreement to lease a

William Ward v. Daniel West
Case No. 09-3255

residence from the Plaintiff, William Ward (hereinafter the "Plaintiff"). The residence is located in the state of Michigan. Under the terms of the lease agreement, only the Debtor and his three sons were permitted to occupy the rental property. *Id.* During his occupancy of the leased premises, however, the Debtor permitted a friend and her children to live at the property.

The Parties' lease agreement provided for a monthly rental payment of $695.00 and set forth June 30, 2008 as the date of the leasehold's expiration. (Doc. No. 15, Ex. A). Prior to the expiration of the leasehold, the Debtor delivered to the Plaintiff a statement setting forth an intention to renew the lease agreement. This intention was never realized, however, with the Debtor and his sons vacating the property in the latter half of July of 2008. After bringing a formal eviction proceeding, the Plaintiff then retook possession of the leased property on September 29, 2008. (Doc. No. 15, Ex. D).

Upon retaking possession, the Plaintiff found his property to be in sub-par condition, with damage existing throughout the leased premises. Although not a complete list, the Plaintiff documented, including through the presentation of photographic evidence, the following damage:

> Broken Toilet; bathroom floor ruined due to urine and shower water; broken tile in entrance hall; bathroom door trim removed; missing and damaged window blinds; holes and other structural damages in the property's walls and doors.

(Doc. No. 15, Ex. j, k, 1, 2, 3, 4, 5). The Plaintiff also documented other deficiencies concerning the condition of the leased property. These deficiencies included:

> a failure to remove all personal effects; outside 'weeding' not performed; a disabled sump pump; 'spills and spoilages' on kitchen floor; crayon in carpet.

(Doc. No. 14, Ex. j).

Page 2

William Ward v. Daniel West
Case No. 09-3255

For his costs to restore the leased property to a habitable condition, the Plaintiff submitted to the Debtor a bill for $2,800.73. (Doc. No. 15, Ex. k). In the bill, the Plaintiff also charged the Debtor $2,325.00 for unpaid rent. After receiving no remittance, the Plaintiff commenced suit in small claims court against the Debtor, obtaining on December 15, 2008, a judgment for $3,000.00 which represented the jurisdictional limit of the court.

On July 10, 2009, the Debtor filed a petition in this Court for relief under Chapter 7 of the United Bankruptcy Code. The Plaintiff, thereafter, commenced a timely action, seeking a determination that his claim against the Debtor was, in accordance with 11 U.S.C. § 523(a)(6), a nondischargeable debt.

### DISCUSSION

Before this Court is the Plaintiff's Complaint to Determine Dischargeability. Matters concerning the dischargeability of a particular debt are deemed under bankruptcy law to be core proceedings. 28 U.S.C. § 157(b)(2)(I). Accordingly, on the Plaintiff's Complaint, Congress has conferred upon this Court the jurisdictional authority to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

### Legal Background

For reasons of public policy, Congress specified that certain types of debts are to be excluded from the scope of a bankruptcy discharge. 11 U.S.C. § 523(a). At the same time, when an order of discharge is entered, it is generally presumed that all of a debtor's prepetition obligations are subject to the discharge order. *Merritt v. Rizzo (In re Rizzo)*, 337 B.R. 180, 187 (Bankr. N.D.Ill. 2006). It is thus recognized that "exceptions to discharge should be confined to those plainly expressed." *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998), *quoting Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915).

Page 3

William Ward v. Daniel West
Case No. 09-3255

In this matter, the Plaintiff relies on § 523(a)(6) as authority for his position that his claim against the Debtor is a nondischargeable debt. This provision excepts from discharge any debt which arises as the result of a willful and malicious injury caused by the debtor. In relevant part, § 523(a)(6) states:

> (a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt–
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

The "willful and malicious injury" exception to dischargeability as set forth in § 523(a)(6) is one of the oldest known in American bankruptcy jurisprudence – being part of the original Bankruptcy Act of 1898 – and is aimed at the type of both socially and morally reprehensible conduct that is not deserving of the fresh-start policy which underlies the Bankruptcy Code. *Superior Metal Products v. Martin (In re Martin)*, 321 B.R. 437, 440 (Bankr. N.D.Ohio 2004). As with other exceptions to dischargeability, it is the movant's burden to establish, by at least a preponderance of the evidence, the applicability of § 523(a)(6). *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 906 (Bankr. N.D.Ohio 1998). Because § 523(a)(6) is written in the conjunctive, this means that the movant must demonstrate that the debtor's conduct was both "willful" and "malicious." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 167 (Bankr.N.D.Ohio 2003).

Neither the term "willful" nor "malicious" is defined by the Bankruptcy Code. But in the case of *Kawaauhau v. Geiger*, the Supreme Court of the United States addressed their scope. 523 U.S. 57, 118 S.Ct. 974, 975, 977, 140 L.Ed.2d 90, 92 (1998). The issue before the Court in *Kawaauhau v. Geiger* was whether "§ 523(a)(6)'s compass cover acts, done intentionally, that cause injury, or only acts done with the actual intent to cause injury?" *Id.* at 61, 118 S.Ct. 974. (internal parentheticals omitted). Put differently, the Court in *Kawaauhau v. Geiger* was asked to decide

Page 4

William Ward v. Daniel West
Case No. 09-3255

whether the *mens rea* requirement of § 523(a)(6) looked only to the general intent of the debtor, or instead required a specific intent to cause harm.

The Court determined that § 523(a)(6) should be read restrictively so as to only encompass acts done with the specific intent to cause harm. In coming to this conclusion, the Court in *Kawaauhau v. Geiger* linked the mental state of § 523(a)(6) with that required of intentional torts. In the Court's words: "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself'" *Id.* at 61-62, 118 S.Ct. 974.

Affording § 523(a)(6) a restrictive reading, the Court also found, avoided undesirable results:

> [the] more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act-for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic-could fit the description. A knowing breach of contract could also qualify. A construction so broad would be incompatible with the well-known guide that exceptions to discharge should be confined to those plainly expressed.

*Id.* at 62, 118 S.Ct. 974 (internal quotations and citations omitted).

### Application of 11 U.S.C. § 523(a)(6)

For his cause of action under § 523(a)(6), the Plaintiff's case-in-chief relied heavily on two facets: (1) the Debtor's breach of the Parties' lease agreement; and (2) his rental property sustaining damage beyond that associated with normal wear and tear. (Doc. No. 1). Factually, such assertions are amply supported by the evidence.

Page 5

William Ward v. Daniel West
Case No. 09-3255

One, the Debtor acknowledged he committed numerous breaches of the Parties' lease agreement such as by failing to pay rent and allowing unauthorized persons to live in the rental property. Also, as recited above, the evidence firmly establishes that, upon the Debtor vacating the rental property, there existed many defects in the condition of the Plaintiff's property which cannot be ascribed to ordinary wear and tear. Prominently, there existed holes and other structural damage to the property's walls and doors; similarly, the toilet in the rental property was broken.

Under Michigan law, a landlord is entitled to recover damages for unpaid rent and for damages to a rental unit "that are the direct result of conduct not reasonably expected in the normal course of habitation of a dwelling." M.C.L.A. §§ 554.607, 554.613. Accordingly, given the Debtor's failure to comply with his duties as a tenant, there is no question that the Plaintiff's recovery of damages in state court was warranted. Notwithstanding, this does not equate with a nondischargeable debt.

Since the Supreme Court's decision in *Kawaauhau v. Geiger*, a breach of contract, even if intentional, will not independently support a finding of nondischargeability as applied to § 523(a)(6).[1] In this same fashion, damage caused to a rental property, even if beyond that associated with normal wear and tear, does not automatically lead to a finding of nondischargeability under § 523(a)(6).[2] Instead, the question of nondischargeability under § 523(a)(6) stands apart of such

---

1

*Lockerby v. Sierra*, 535 F.3d 1038, 1042-43 (9th Cir. 2008). *See also In re Huggins*, 252 B.R. 567, 569 (Bankr. M.D.Fla. 2000) (claims for breach of a lease contract which allegedly caused damage to plaintiff's property was a breach of contract claim and fell far short of the standards required by § 523(a)(6)); *In re King*, 258 B.R. 786, 795 (Bankr. D. Mont. 2001) (breach of lease by failing to pay rent and make certain repairs, did not rise to level of 'willful and malicious injury' under § 523(a)(6)).

2

*See In re Feist*, 225 B.R. 450 (Bankr. D.N.D.1998) (unauthorized removal of fixtures does not automatically give rise to a nondischargeable debt); *Magee v. Phillipps (In re Phillipps)*, 54 B.R. 273, 277 (Bankr. D.Col.1985) (waste as the result of the heat turned off, water in the house

William Ward v. Daniel West
Case No. 09-3255

issues, and comes down to simply whether, within the meaning of the statute, the debtor acted in a willful and malicious manner.

Consistent with this approach, a willful and malicious injury will not, when involving rental property, normally arise by a debtor's simple neglect of the property. *Mathes v. Woolner (In re Woolner)*, 109 B.R. 250, 254 (Bankr.E.D.Mich.1990) (mere neglect of property which causes a diminution in value is not willful or malicious for purposes of 11 U.S.C. § 523(a)(6)). As this Court previously recognized in a similar case:

> Since *Kawaauhau v. Geiger* . . . it has been recognized that a debtor's negligence in failing to maintain a rental property will not be, without more, sufficient to support a claim of nondischargeability under 11 U.S.C. § 523(a)(6). In this regard, persons intending to cause harm do not normally do so by passive acts, such as failing to properly clean and maintain another's property.
>
> Instead, the specific intent standard espoused in *Kawaauhau v. Geiger* will normally be accompanied by overt acts, or something closely akin thereto- e.g., purposely failing to act in order to produce a desired consequence.

*Knowles v. McGuckin (In re McGuckin)*, 418 B.R. 251, 256 (Bankr. N.D.Ohio 2009) (internal citations omitted).

Under this approach, the Court would tend to agree that a significant portion of the damage caused to the Plaintiff's property appears to be more the result of neglect, as opposed to overt acts, thereby placing it outside the scope of § 523(a)(6). Particularly, in light of the photographic evidence, those damages incurred by the Plaintiff for things such as the Debtor's failure to remove all personal effects, not 'weeding' and a ruined bathroom floor are easily ascribed to neglect. In this regard, bathroom floors are, by definition, subjected to significant amounts of moisture.

---

then freezing, and the pipes bursting cannot be characterized as deliberate or intentional injury for purposes of 11 U.S.C. § 523(a)(6)).

Page 7

William Ward v. Daniel West
Case No. 09-3255

Other forms of damage done to the Plaintiff's property, however, cannot be ascribed to just neglect. Obviously, a broken toilet, removed trim, and holes in walls and doors cannot be said to result from passive acts. Yet, based upon the evidence before it, the Court is unwilling to go so far and find that such damages stem from willful and malicious conduct on the part of the Debtor.

First, regarding the toilet, the Debtor explained that when he moved into the rental property, he dropped something on it, causing the toilet to break. The Court finds this explanation to be credible, considering that, while the whole unit had to be replaced, only the lid to the toilet was actually broken. In this regard, it is far easier to envision the lid of a toilet being accidently broken, as opposed to the whole unit being broken. The Court also finds the Debtor's explanation regarding the damage to the rental property's walls and doors to be credible.

In explaining the holes in the property's walls and doors, the Debtor testified that this damage was caused by his children who were "roughhousing." This again seems plausible. The Debtor has two sons, ages 16 and seven. At these ages, both boys would be physically capable of causing structural damage to the property's walls and doors. Moreover, such damage can reasonably be ascribed to simple childhood exuberance. Along this same line, the seven year old son, as well as the two year old son, could also account for other damages sustained by the Plaintiff's property such as the crayon found on the property's carpet as well as the spills on the kitchen floor.

This is not to say that debtors can let their children run roughshod in a rental property and then be relieved of all liability for a willful and malicious injury. To the contrary, in the case of *O'Brien v. Sintobin (In re Sintobin)*, this Court imputed liability under § 523(a)(6) to debtor-parents for the acts of their minor children when the debtors so neglected to supervise their children that their passive conduct could only be construed as encouragement. 253 B.R. 826 (Bankr. N.D.Ohio 2000). But the facts presented in this case do not anywhere near approach the circumstances presented in *In re Sintobin* wherein the debtors' children repeatedly vandalize the rental property – for example, by spray painting the walls.

Page 8

**William Ward v. Daniel West**
**Case No. 09-3255**

Finally, the evidence shows the Debtor's explanation regarding the removal of the trim to be credible. After moving into the rental property, the Debtor undertook to move in two new appliances, a stove and a refrigerator, a point acknowledged by the Plaintiff. However, the Debtor explained in order to properly fit the appliances – particularly, the refrigerator – trim and molding had to be removed. For this reason, while Debtor should have reattached the trim and molding, their removal, done in an attempt to improve the rental property, cannot be ascribed to willful and malicious injury.

Notwithstanding, as overall evidence of the Debtor's intention to harm his property, the Plaintiff pointed out that a sump pump in the basement had been turned off, insinuating that the Debtor took this action so as to intentionally cause flooding to the basement. This condition, a disabled sump pump, does strike this Court as strange. Even so, the Court is unwilling to make the leap that such evidence morphs the damages sustained by the Plaintiff into the form of a willful and malicious injury committed by the Debtor.

Two points in this regard are particularly important. First, there is the question of exclusive control, with there existing a full two month gap between the time the Debtor vacated the rental property and the time in which the Plaintiff retook possession. Second, it cannot be overlooked that no flooding to the basement ultimately occurred, thus negating a necessary element of a cause of action under § 523(a)(6): causation.

For all these reasons, the Court is not persuaded that the damage caused to the Plaintiff's rental property arose from willful and malicious acts on the part of the Debtor as defined by the Bankruptcy Code and interpreted in subsequent court decisions. This is not to say the Court finds the Debtor's conduct toward the Plaintiff's rental property to be exemplary. To the contrary, the Debtor obviously acted with a large degree of disrespect toward the Plaintiff's property. At the same time, under the circumstances as they exist in this case, the Debtor's disrespectful treatment of the Plaintiff's property cannot be said to rise to the level of a willful and malicious injury for purposes of 11 U.S.C. § 523(a)(6).

Page 9

William Ward v. Daniel West
Case No. 09-3255

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Plaintiff's Complaint to Determine Dischargeability, be, and is hereby, DISMISSED.

**IT IS FURTHER ORDERED** that any obligation of the Debtor, Daniel West, to the Plaintiff, William Ward, arising from the Parties' lease relationship, be, and is hereby, determined to be a DISCHARGEABLE DEBT.

Dated: April 27, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 10

# CERTIFICATE OF SERVICE

Copies were mailed this 27th day of April 2010 to:

William F Ward
6245 Memorial Highway
Ottawa Lake, MI 49267

Daniel R. West
811 Foley Run
North Baltimore, OH 45872

Beauregard Maximillion Harvey
425 Jefferson Avenue, Suite 910
Toledo, OH 43604

                                                /s/Jennifer S Huff
                                       Deputy Clerk, U.S. Bankruptcy Court